**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | DISTRICT COURT NO. 4:24-CV-00213 |
| | § | |
| **BASIC ENERGY SERVICES, INC.,** *et al.*, | § | ADV. PROC. NO. 23-03208 |
| | § | |
| | § | MAIN BANKRUPTCY CASE: |
| Debtors. | § | CHAPTER 11 |
| | § | |
| _____ | § | |
| **PPC ENERGY, LP and PRIEST** | § | |
| **PETROLEUM CORPORATION,** | § | CASE NO. 21-9002 |
| | § | |
| | § | (JOINTLY ADMINISTERED) |
| Plaintiffs, Counter-Defendants, and Appellants | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| **SELECT ENERGY SERVICES, LLC,** | § | |
| | § | |
| Defendant and Appellee. | § | |

**APPELLANTS' RESPONSE TO APPELLEE'S**
**MOTION TO DISMISS APPEAL**

TO THE HONORABLE U.S. DISTRICT JUDGE ALFRED H. BENNETT:

Plaintiffs, Counter-Defendants, and Appellants PPC Energy, LP and Priest Petroleum Corporation (collectively, "PPC") submit this *Response to Appellee's Motion to Dismiss Appeal,* and in support thereof respectfully show the Court as follows:

**I.**
**PROCEDURAL HISTORY**

This case involves claims brought by PPC against Select Energy Services, LLC ("Select") related to oil and gas reserves damaged by a saltwater injection well (the "Orla Kessler") in Reeves County, Texas.  In short, PPC alleges the former owner of the Orla Kessler (from which Select purchased the well in bankruptcy) destroyed PPC's oil reserves (the "Pre-Bankruptcy Claims")

and that, after its purchase, Select continued using the Orla Kessler, thereby and causing additional harm to PPC (the "Post-Bankruptcy Claims").

A.     **Plaintiffs sue Basic.  Basic files for bankruptcy.**

On January 9, 2020, PPC sued Basic Energy Services, LP ("Basic"), alleging Basic's saltwater injection operations into the Orla Kessler ruined PPC's reserves.  PPC alleged Basic's actions violated the Texas Natural Resources Code prohibition on "waste" of oil and gas and brought claims for negligence, negligence per se, and statutory waste, among others.

On August 17, 2021, while the state court lawsuit was ongoing, Basic commenced a voluntary case under Chapter 11 of Title 11 of the United States Code in the U.S. Bankruptcy Court for the Southern District of Texas.

During bankruptcy, Basic agreed to sell the Orla Kessler, among other assets, to Select pursuant to an Asset Purchase Agreement and Assumption Agreement (collectively, the "Agreements"), both of which were approved by the bankruptcy court.  Per the terms of the Agreements, Select agreed to pay all "Assumed Liabilities" if and when due from Basic.  The definition of "Assumed Liabilities" included all liabilities "associated with the Assets arising under Environmental Law . . . ***whether arising on, before, or after the Closing Date*** . . . ."  The definition of "Environmental Law" expressly included "any Applicable Law . . . relating to . . . the environment (including ambient air, soil, surface water or groundwater, or subsurface strata) [or] protection of ***natural resources***."  And, the definition of "Applicable Law" means "any federal, state, or local law (***statutory, common or otherwise***)."

On October 14, 2021, the bankruptcy court lifted the automatic stay to allow the state court litigation to continue provided that PPC would not seek recovery from property of Basic's estate. The state court trial judge submitted PPC's various claims under a broad-form negligence question

(with a negligence per se instruction on waste), the jury rendered a verdict for PPC, and the trial court reduced the verdict to a final judgment.

**B.      PPC brings suit against Select to enforce Select's obligation to pay liabilities arising under "Environmental Law."  Select removes and PPC contests jurisdiction.**

PPC sued Select in Harris County District Court, alleging Select had liability for the Pre-Bankruptcy claims through the Agreements and for the Post-Bankruptcy Claims in its own right. Select removed this matter to bankruptcy court.  There is no diversity jurisdiction.

And, because this case involves two non-debtors, a post-petition adjudication of liability, and no possibility of impact to either property of the estate or the debtor's plan, bankruptcy court jurisdiction in this matter is hotly contested.  PPC contests bankruptcy court jurisdiction and has not consented to the entry of final orders from the bankruptcy court (ECF[1] 7, p. 2).  On October 26, 2023, the bankruptcy court found it had core "related to" jurisdiction.  [Exhibit A, 65:22–77:1].

**C.      The bankruptcy court orders briefing on the "dispositive" issues and rules.**

On November 2, 2023, the bankruptcy court ordered briefing on:

> Whether all or any portion of the "Final Judgment" entered by the 143rd District Court of Reeves County, Cause No. 20-01-23355-CVR, in favor of PPC Energy, LP and Priest Petroleum Corporation against Basic Energy Services, LP is an "Assumed Liability" as defined in the executed Asset Purchase Agreement approved by the Court in connection with the Order at Main Case Docket No. 438.

ECF 30, p. 1, ¶ 3.  PPC submitted briefing requested by the bankruptcy court (ECF 39) and Select moved for partial summary judgment (ECF 40).  A hearing has not been set on the motion for summary judgment and it was not ruled upon. (ECF 49).

---

[1] References to "ECF" are to the Southern District of Texas Bankruptcy Court Adversary Proceeding Docket for Case No. 23-03208.

On January 4, 2024, the bankruptcy court issued a nine-page ruling from the bench "on the dispositive issue in connection with the adversary proceeding." (ECF 49).  In short, the Court ruled that the Pre-Bankruptcy Claims were not assumed liabilities per the terms of the Agreements.

In reaching its conclusion, the bankruptcy court relied on the premise that it "should not construe a contract provision in a manner that's unreasonable or absurd."  [Exhibit A, at 17:24–18:9].  However, Texas courts and courts interpreting Texas law may not rewrite the unambiguous language agreed-to by two well-represented parties under the guise of avoiding an "absurd result:"

> We will not enforce the unambiguous language of a contract if doing so would lead to an absurd result.  But, our jurisprudence reserves the "absurdity safety valve" for truly exceptional cases.  Mere oddity does not equal absurdity.  Likewise, unambiguous contract terms that lead to a quirky or unusual result do not rise to the level of being unthinkable or unfathomable.  Under this demanding standard, Fairfield's interpretation of the Agreement would lead to an absurd result only if it were "quite impossible" that a rational person could have intended it.

*Fairfield Industries, Inc. v. EP Energy E&P Co., LP*, 531 S.W.3d 234, 242, 248–49 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("Our role is not to question the wisdom of the parties' agreement or to rewrite its provision under the guise of interpreting it.").

The Court also determined the Final Judgment did not "arise under" an environmental law because the trial court submitted PPC's negligence, negligence per se, and statutory negligence claims under a single broad-form jury question.  [Exhibit B, 24:4–14].  The bankruptcy court: (1) ignored that Texas courts have repeatedly held the Texas Natural Resources Code creates a private cause of action for waste; (2) failed to acknowledge that the definition of "Applicable Law" in the Agreements includes "common" law; and (3) conducted no analysis of whether Select assumed liabilities arising under ***both*** an environmental law and other sources.  *See Discovery Operating, Inc. v. BP America Prod. Co.*, 311 S.W.3d 140, 161, 163 (Tex. App.—Eastland 2010, pet. denied)

("Based on the Texas Supreme Court's holding in *Emerald*, Discovery has the right under Section 85.321 to assert its negligence per se claims against BP, whether the claims are labeled as a private cause of action for violations of statutes and Railroad Commission rules and orders or as negligence per se claims for violations of the same statutes, rules, and orders . . . By enacting Section 85.321, the legislature created a cause of action in favor of a party who owns an interest in property or production that may be damaged by another party's violation" of a "Texas law prohibiting waste.").

## II.
### ARGUMENT

**A.     The January 4 ruling is an appealable order.**

This Court's jurisdiction over appeals from cases arising in bankruptcy court is provided for under 28 U.S.C. § 158(a).  The bankruptcy court found that Select was not liable for the Pre-Bankruptcy Claims which disposes of those claims.  Whether an order is final (and therefore appealable) is more liberal in the bankruptcy context. *See Lentino v. Cage (In re Lentino),* 1999 U.S. App. LEXIS 3436, No. 98-20626, 1999 WL 77140, at *2 (5th Cir. Mar. 5, 1999).

Select's argument that the appeal should be dismissed ignores that the bankruptcy court has now ruled on the only dispositive issue concerning the Pre-Bankruptcy Claims.  Although the bankruptcy court's order was not dispositive over both Pre-Bankruptcy Claims and Post-Bankruptcy Claims—the bankruptcy court has only expressly exercised jurisdiction over the Pre-Bankruptcy Claims.  Therefore, once the Pre-Bankruptcy Claims are disposed of, the bankruptcy court has adjudicated "all the claims" over which it contends it has jurisdiction. *Matter of Wood and Locker, Inc.*, 868 F.2d 139, 143 (5th Cir. 1989) (final judgment is "one in which there were no other claims remaining to be adjudicated"). Further, it is not necessary for the bankruptcy court

to reduce its ruling to a written order. *Ueckert v. Guerra*, 38 F.4th 446, 451 (5th Cir. 2022) ("The test for finality is whether the district court intended that its order be 'effective immediately.'").

It was incumbent upon PPC to appeal or risk a finding that the appeal deadline had run. The U.S. Court of Appeals for the Fifth Circuit recently ruled that an untimely appeal—even based on the mistaken belief that the appellate deadlines had not yet begun to run—deprives the appellate court of jurisdiction. *See id.* For example, in *Ueckert*, a party filed a notice of appeal after the appellate deadlines had run based on the mistaken belief that the oral denial of a motion for summary judgment was not a final, appealable order. *Id.* at 448. The Fifth Circuit held that, despite a good faith belief to the contrary, the lapse in the appellate deadline deprives the court of jurisdiction to hear the appeal. *See id.* ("And we cannot forgive this lapse because timeliness is jurisdictional.").

**B.    In the alternative, this Court should grant a permissive appeal.**

Select admits (after making gratuitous *ad hominem* attacks directed at bankruptcy counsel) that, in the alternative, this Court has discretion to "treat the notice of appeal as a motion for leave [to appeal] and either grant or deny it." [Dkt. 2, p. 6]. Select likewise admits that all of the information required by Federal Rule of Bankruptcy Procedure 8004(d) was included within the transcript attached to the notice of appeal. However, out of an abundance of caution, the information is restated herein, and PPC requests that the Court grant an interlocutory appeal of the bankruptcy court's order.

*(a)    The facts necessary to understand the question*

Per the terms of the Agreements, Select agreed to pay all liabilities associated with the Orla Kessler arising under Environmental Law whether arising on, before, or after the Closing Date. The definition of "Environmental Law" expressly included "any Applicable Law . . . relating to .

. . natural resources."  PPC sued Select and established Select's liability under the Texas Natural Resources Code, which is an applicable law relating to the protection of natural resources.

Texas law permits PPC to submit the cause of action "created" by the Texas Natural Resources Code as a negligence per se claim, which PPC did.  *See Discovery Operating*, 311 S.W.3d 140, 161, 163.  Further, Texas law requires trial courts to submit negligence and negligence per se claims in a broad form liability question with an instruction on negligence per se—which is exactly what the trial court did.  *Texas Pattern Jury Charges – General Negligence, Intentional Personal Torts & Workers' Compensation* PJC 5.3 (2018).  Therefore, PPC established Basic's liability through an Environmental Law, as defined by the Agreements.

    **(b)**    ***The question itself***

Whether all or any portion of the "Final Judgment" entered by the 143rd District Court of Reeves County, Cause No. 20-01-23355-CVR, in favor of PPC Energy, LP and Priest Petroleum Corporation against Basic Energy Services, LP is an "Assumed Liability" as defined in the executed Asset Purchase Agreement approved by the Court in connection with the Order at Main Case Docket No. 438.

    **(c)**    ***The relief sought***

PPC seeks a determination of the question in the affirmative (*i.e.*, that all of the Final Judgment is an "Assumed Liability").

    **(d)**    ***Reasons why leave to appeal should be granted***

The Court should grant leave because PPC satisfies all factors under 28 U.S.C. § 1292(b).

First, there is no dispute that the question is one of law insofar as the Agreements are unambiguous.  [Dkt. 2, p. 7].

Second, the question is controlling of the Pre-Bankruptcy Claims.  Indeed, the bankruptcy court termed the question "dispositive."

Third, there is substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision.  Among other matters, substantial ground for difference of opinion exists concerning whether the bankruptcy court can refuse to apply the unambiguous language of the Agreements under the guise of avoiding absurd results.  Under Texas law, this is only permitted where it is "quite impossible that a rational person could have intended" the result dictated by the unambiguous language.  *Fairfield.*, 531 S.W.3d at 249.  Select has simply not made any showing that it is "impossible" that a rational entity, represented by counsel, could agree to assume the liabilities associated with the Orla Kessler well as dictated by the terms of the Agreements.

Fourth, an immediate appeal would materially advance the ultimate termination of the litigation because it would dispose, one way or the other, of the Pre-Bankruptcy Claims, allowing remand of the Post-Bankruptcy Claims.

Therefore, to the extent necessary, PPC respectfully requests that the Court grant interlocutory appeal of the bankruptcy court's order.

### III.
### Conclusion

WHEREFORE, PREMISES CONSIDERED, Appellants PPC Energy, LP and Priest Petroleum Corporation pray that the Court deny *Appellee's Motion to Dismiss Appeal* in its entirety and that PPC be awarded all other relief, at law, or in equity, to which they may be justly entitled.

Respectfully submitted,

Jeff P. Prostok
State Bar No. 16352500
jprostok@forsheyprostok.com
777 Main St., Suite 1290
Fort Worth, Texas  76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

and

Michael K. Reer
Attorney-in-charge
S.D. Tex. ID. 3272174
State Bar No. 24088281
mreer@hfblaw.com
**HARRIS, FINLEY & BOGLE, P.C.**
777 Main Street, Suite 1800
Fort Worth, Texas  76102
Telephone No.: (817) 870-8700
Facsimile No.: (817) 332-6121

**ATTORNEYS FOR PLAINTIFFS
PPC ENERGY, LP AND PRIEST
PETROLEUM CORPORATION**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing instrument was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record on February 20, 2024.

Michael K. Reer