NO. 4:24CV-00213

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---

**PPC Energy, LP and Priest Petroleum Corporation**

**Appellants**

**v.**

**Select Energy Services, LLC**

**Appellee**

---

**On Appeal from the United States Bankruptcy Court**
**for the Southern District of Texas, Houston Division**
**Main Bankruptcy Case No. 21-9002**
**Adv. Proc. No. 23-0328**

---

**APPELLANTS' BRIEF**

---

| | |
|---|---|
| Jeff P. Prostok | Michael K. Reer |
| State Bar No. 16352500 | Attorney-in-charge |
| jprostok@forsheyprostok.com | S.D. Tex. ID. 3272174 |
| **FORSHEY & PROSTOK, LLP** | State Bar No. 24088281 |
| 777 Main Street, Suite 1550 | mreer@hfblaw.com |
| Fort Worth, Texas  76102 | **HARRIS, FINLEY & BOGLE, P.C.** |
| Telephone No.: (817) 877-8855 | 777 Main Street, Suite 1800 |
| Facsimile No.: (817) 877-4151 | Fort Worth, Texas  76102 |
| | Telephone No.: (817) 870-8700 |
| | Facsimile No.: (817) 332-6121 |

**ATTORNEYS FOR APPELLANTS**

## CORPORATE DISCLOSURE STATEMENT

Appellants PPC Energy, LP and Priest Petroleum Corporation, by the undersigned counsel and pursuant to Fed. R. Civ. P. 7.1, certify that:

(A)    PPC Energy, LP has no parent company. The limited partner of PPC Energy, LP is Roy Priest. The general partner of PPC Energy, LP is Priest Petroleum Corporation. No publicly held corporation owns any interest in PPC Energy, LP.

(B)    Priest Petroleum Corporation has no parent company and no publicly held corporation owns more than ten percent (10%) or more of Priest Petroleum Corporation stock.

In accordance with Rule 8012 of the Federal Rules of Bankruptcy Procedure, the following is a corporate disclosure for each of the above-captioned debtors in the above-captioned bankruptcy proceedings.[1]

(A)    According to Basic Energy Services, LP's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90001], (i) Basic Energy Services, LP, LLC, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 99.99% limited partnership interest in to Basic

---

[1] For the avoidance of doubt, the information contained in the subsequent section was derived exclusively from the debtors' petitions each found at Docket No. 1 in Case Nos. 21-90001 thru 21-90013.

i

Energy Services, LP and (ii) Basic Energy Services, GP, LLC, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102 has a 0.01% limited partnership interest in Basic Energy Services, LP.

(B)     According to Basic Energy Services, Inc.'s *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 24 of 25, Case No. 21-90002], Ascribe III Investments LLC, 299 Park Avenue, 34th Floor New York, NY 10171, has 85.06% of Series A Preferred Stock of Basic Energy Services, Inc.

(C)     According to C&J Well Services, Inc.'s *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90003], Basic Energy Services, Inc., 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has 100% of common and preferred shares of C&J Well Services, Inc.

(D)     According to KVS Transportation, Inc.'s *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90004], C&J Well Services, Inc., 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has 100% of common shares of KVS Transportation, Inc.

(E)     According to Indigo Injection #3, LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90005], C&J Well Services, Inc., 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in Indigo Injection #3, LLC.

(F)     According to Basic Energy Services GP, LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90006], Basic Energy Services, Inc., 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in Basic Energy Services GP, LLC.

(G)     According to Basic Energy Services LP, LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90007], Basic Energy Services, Inc., 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in Basic Energy Services LP, LLC.

(H)     According to Taylor Industries, LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy*

*Procedure* [Docket No. 1, p. 20 of 21, Case No. 21-90008], Basic Energy Services, LP, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in Taylor Industries, LLC.

(I)    According to SCH Disposal, LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90009], Basic Energy Services, LP, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in SCH Disposal, LLC.

(J)    According to Agua Libre Holdco, LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90010], Basic Energy Services, LP, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in Agua Libre Holdco, LLC.

(K)    According to Agua Libre Asset CO, LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90011], Agua Libre Holdco LLC, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in Agua Libre Asset CO, LLC.

(L)     According to Agua Libre Midstream LLC's *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90012], Agua Libre Holdco, LLC, 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has a 100% membership interest in Agua Libre Midstream LLC.

(M)     According to Basic ESA, Inc.'s *List of Equity Security Holders Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure* [Docket No. 1, p. 23 of 24, Case No. 21-90013], Basic Energy Services, Inc., 801 Cherry Street, Suite 2100, Fort Worth, TX 76102, has 100% of common shares of Basic ESA, Inc.

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES PRESENTED ............................................................ 1

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF THE CASE ............................................................ 3

    A.  PPC sues Basic.  Basic files for bankruptcy. ............................................. 3

    B.  Basic markets its water logistics business through a
competitive bidding process.  Select and Basic enter into
the APA, and Select agrees to pay and satisfy every
"Assumed Liability." ............................................................ 4

    C.  Basic's liability is adjudicated. ............................................................ 6

SUMMARY OF THE ARGUMENT ............................................................ 6

ARGUMENT AND AUTHORITIES ............................................................ 7

    A.  The Bankruptcy Court erred in determining that Basic's
liability to PPC did not "arise under" an Environmental Law. ................ 7

        (1)  PPC's statutory claim for waste arises under the
Texas Natural Resources Code—an Environmental Law ............... 7

        (2)  PPC's common law claim for waste is also an
Environmental Law. ............................................................ 11

    B.  Applying the plain meaning of the APA does not lead to
absurd results—it enforces  the agreement the parties made. ................ 13

    C.  Basic's failure to list the Reeves County case on APA
Schedule 3.07 is a breach of warranty, not an expression
of the parties' intent to exclude the Final Judgment from
the scope of Assumed Liabilities. ............................................................ 17

CONCLUSION AND PRAYER ............................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*In re Am. Coastal Energy*,
    399 B.R. 805 ................................................................................14

*Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp.*
    *(In re Foster Mortg. Corp.)*,
    68 F.3d 914 (5th Cir. 1995) ......................................................3

*In re Davenport*,
    522 S.W.3d 542 (Tex. 2017) ....................................................13

*Discovery Operating, Inc. v. BP Am. Prod. Co.*,
    311 S.W.3d 140 (Tex. App.—Eastland 2010, no pet)....................................8, 9

*Elephant Ins. Co., LLC v. Kenyon*,
    644 S.W.3d 137 (Tex. 2022) ....................................................11

*Elliff v. Texon Drilling Co.*,
    210 S.W.2d 558 (Tex. 1948) ....................................................11

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,
    331 S.W.3d 419 (Tex. 2010) ....................................................8

*Exxon Corp. v. Miesch*,
    180 S.W.3d 299 (Tex. App.—Corpus Christi 2005), *rev'd on
    limitations grounds sub. nom. Exxon Corp. v. Emerald Oil & Gas
    Co.*, 348 S.W.3d 194 (Tex. 2011)....................................................11

*Fairfield Indus., Inc. v. EP Energy E&P Co., L.P.*,
    531 S.W.3d 234 (Tex. App.—Houston [14th Dist.] 2017, pet.
    denied)....................................................14

*King v. Dallas Fire Ins. Co.*,
    85 S.W.3d 185 (Tex. 2002)....................................................16

*Lion Co-Polymers Holdings, LLC v. Lion Polymers, LLC*,
    No. 01-16-00848-CV, 2018 WL 3150863
    (Tex. App.—Houston [1st Dist.] June 28, 2018, pet. denied)............................13

*Louisiana-Pacific Corp. v. Knighten,*
    976 S.W.2d 674 (Tex. 1998) ...........................................................................10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,*
    578 U.S. 374 (2016)...........................................................................................7

*Midlantic Nat. Bank v. N.J. Dept. of Envtl. Prot.,*
    474 U.S. 494 (1986)..........................................................................................14

*Mohammagi v. Albertsons, LLC,*
    656 S.W.3d 851 (Tex. App.—Houston [14th Dist.] 2022, pet. filed) .................9

*In re Motors Liquidation Co.,*
    585 B.R. 708 (Bankr. S.D.N.Y. 2018)..............................................................16

*Pavecon, Inc. v. R-Com, Inc.,*
    159 S.W.3d 219 (Tex. App.—Fort Worth 2005, no pet.)..................................13

*Perry v. S.N.,*
    973 S.W.2d 301 (Tex. 1998) ...........................................................................10

*Ring Energy v. Trey Res. Inc.,*
    546 S.W.3d 199 (Tex. App.—El Paso 2017, no pet.) .........................................8

*S. Pacific Co. v. Castro,*
    493 S.W.2d 491 (Tex. 1973) ...........................................................................10

*Tex. Dept. of Human Servs. v. E.B.,*
    802 S.W.2d 647 (Tex. 1990) .............................................................................9

*Thomas v. Thomas,*
    No. 05-22-00137-CV, 2023 WL 8862695
    (Tex. App.—Dallas Dec. 22, 2023, no pet.).....................................................13

*URI, Inc. v. Kleberg Cty.,*
    543 S.W.3d 755 (Tex. 2018) ......................................................................17, 18

**Statutes**

11 U.S.C. § 11 ....................................................................................1, 4, 14, 16

28 U.S.C. § 158(a)(1)...............................................................................................2

28 U.S.C. § 1334......................................................................................................1

Tex. Nat. Res. Code § 85.045 .................................................................7, 8

Tex. Nat. Res. Code § 85.046 .................................................................7, 8

Tex. Nat. Res. Code § 85.321 ...................................................................8

TEX. R. CIV. P. 277....................................................................................9

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether the Bankruptcy Court erred in holding that claims for negligence and negligence per se, as reflected by a Final Judgment entered by the 143rd District Court of Reeves County, Texas, in Cause No. 20-01-23355-CVR do not arise under an "Environmental Law" as defined by the Asset Purchase Agreement.

2.     Whether the Bankruptcy Court erred in failing to apply the unambiguous text of the bankruptcy-court-approved Asset Purchase Agreement, negotiated and agreed to by two sophisticated parties, by finding that enforcement of the language of the Asset Purchase Agreement, as written, would lead to absurd, oppressive, and inequitable results.

3.     Whether the Bankruptcy Court erred in concluding that Basic's failure to list the Reeves County litigation on Schedule 3.07 to the APA as an "Environmental Matter" supported the Bankruptcy Court's conclusion that the parties did not intend to include the Final Judgment as an Assumed Liability.

## JURISDICTIONAL STATEMENT

Appellees contend this matter arose under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and that the Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") had subject matter jurisdiction under 28 U.S.C. § 1334.

1

In the underlying bankruptcy, Select Energy Services, LLC ("Select") purchased certain assets from debtor Basic Energy Services, LP ("Basic") pursuant to an Asset Purchase Agreement (the "APA"). The parties contest whether Select agreed to assume certain environmental liabilities pertaining to the Orla Kessler saltwater injection well in the APA.

Plaintiffs PPC Energy, LP and Priest Petroleum Corporation (collectively, "PPC") sued Select in Texas state court to enforce the APA, and Select removed the lawsuit to the Bankruptcy Court. [App. 1; R000010].[2] There is no diversity jurisdiction. PPC contests Bankruptcy Court jurisdiction of a post-bankruptcy dispute involving a post-filing agreement and has not consented to the entry of final orders from the Bankruptcy Court. [Adv. Dkt. 7]. On October 26, 2023, the Bankruptcy Court found core "related to" jurisdiction over this dispute. [App. 37; R000430].

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a)(1) because the Bankruptcy Court entered a final order on January 4, 2024 and PPC timely filed a notice of appeal January 19, 2024. [ECF 1].[3]

---

[2] References to "App." herein refer to the Appendix in Support of Appellants' Brief, filed contemporaneously with the Court.
[3] References to ECF made herein refer to documents filed with this Court.

2

## STANDARD OF REVIEW

The Bankruptcy Court's legal conclusions are reviewed *de novo*, and any findings of fact are reviewed for clear error. *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

## STATEMENT OF THE CASE

This case involves PPC's claims against Select related to oil and gas reserves displaced by a saltwater injection well (the "Orla Kessler") in Reeves County, Texas. [App. 307; R000700-709].[4]  In short, PPC alleges injections of saltwater into the Orla Kessler by Basic caused the displacement and destruction of PPC's nearby oil and gas reserves and that, after the Orla Kessler was sold to Select, additional saltwater injections by Select made plugging and abandonment of PPC's now-worthless producing wells more expensive.  [App. 15-16; R000024-25].

For the purposes of this appeal, the critical question before the Court is whether Select assumed pre-bankruptcy liabilities associated with the loss of PPC's oil and gas reserves.  This is a case of contract interpretation; not a traditional bankruptcy matter or a core bankruptcy proceeding.

### A.    PPC sues Basic.  Basic files for bankruptcy.

On March 1, 2021, PPC filed its Second Amended Petition & Plea in Avoidance against Basic, alleging Basic's saltwater injection operations into the

---

[4] The Exhibits to Adversary Docket 39 were admitted by the Bankruptcy Court. [App. 1467; R002956 at 10:4–16].

Orla Kessler ruined PPC's reserves. [App. 307; R000700]. PPC alleged Basic's actions violated the Texas Natural Resources Code prohibition on "waste" of oil and gas and brought claims for negligence, negligence per se, and statutory waste, among others. [App. 309-10; R000702-703].

On August 17, 2021, while the state court lawsuit was ongoing, Basic filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. [App. 189; R000582]. On October 14, 2021, the Bankruptcy Court entered an order lifting the automatic stay (the "Lift Stay Order") to allow the state court lawsuit against Basic to proceed to conclusion. [App. 301; R000694].

**B.**    **Basic markets its water logistics business through a competitive bidding process. Select and Basic enter into the APA, and Select agrees to pay and satisfy every "Assumed Liability."**

The day Basic filed bankruptcy, it filed an emergency motion seeking approval of bidding procedures to market and sell Basic's water logistics business—including the Orla Kessler. [App. 189; R000582]. Select was the stalking horse bidder. [App. 261; R000654]. On September 16, 2021, Basic notified the Bankruptcy Court that Select was successful in submitting the most favorable and highest bid for Basic's water logistics business. [R003587]. Select and Basic agreed Select would pay: "(a) $15,000,000 in cash . . . and assume all Assumed Liabilities in accordance with this Agreement." [App. 80; R000473]. Basic and Select defined "Assumed Liabilities" broadly:

"Assumed Liabilities" means:

      (a)     all Liabilities under or associated with or appurtenant to the Assets to the extent related to periods from and after the Closing Date, including without limitation all such Liabilities arising out of the operation and/or ownership of the Assets from and after the Closing Date;

      (b)     all Assumed Prepetition Accounts Payable;

      (c)     [reserved];

      (d)     all asset retirement obligations related to the Assets;

      (e)     all Liabilities associated with the Assets arising under Environmental Law, including with respect to Environmental Claims whether arising on, before or after the Closing Date, including without limitation those related to the control, storage, handling, transporting and disposing of or discharge of all materials, substances and wastes from the Assets, including produced water, hydrogen sulfide gas, drilling fluids, NORM and other wastes;

[App. 146; R000539].  The parties defined "Liability" as:

"Liability" means any direct or indirect liability, indebtedness, obligation, commitment, expense, loss, claim, deficiency, or guaranty of or by any Person of any types, whether known or unknown, and whether accrued, absolute, contingent, matured or unmatured.

[App. 151; R000544].  The parties defined "Environmental Law" as:

"Environmental Law" means any Applicable Law or any binding agreement with any Governmental Authority relating to the protection of occupational or human health and safety (to the extent relating to exposure to Hazardous Substances), the environment (including ambient air, soil, surface water or groundwater, or subsurface strata), protection of natural resources, endangered, threatened or candidate species, biological or cultural resources, the release into the indoor or outdoor environment of pollutants, contaminants, wastes, chemicals, or toxic or other hazardous substances (or the cleanup thereof) or concerning the exposure to, or the generation, storage, transportation, disposal, Release or remediation of any Hazardous Substances.  The term "Environmental Laws" does not include good or desirable operating practices or standards that may be employed or adopted by other salt water disposal well operators or recommended, but not required, by a Governmental Authority.

[App. 149; R000542].  The parties also defined "Applicable Law:"

"Applicable Law" means, with respect to any Person, any federal, state or local law (statutory, common or otherwise), constitution, ordinance, code, rule, regulation, order, injunction or judgment adopted or promulgated by a Governmental Authority (or under the authority of the New York Stock Exchange) that is binding upon or applicable to such Person, as amended unless expressly specified otherwise.

[App. 145; R000538].

A week later, the Bankruptcy Court entered a sale order, which approved the sale of the water logistics business "free and clear" *but subject to* the "Assumed Liabilities" as defined in the APA. [App. 260; R000653]. In October 2021, Basic and Select executed an Assumption Agreement by which Select agreed to undertake, assume, and pay "Assumed Liabilities" as defined by the APA. [App. 254; R000647].

## C. Basic's liability is adjudicated.

Consistent with the Lift Stay Order, PPC proceeded to trial in Reeves County District Court and was awarded judgment against Basic on May 12, 2023 (the "Final Judgment"). [App. 318-19; R000711–12]. Now that Basic's environmental liability to PPC has been fully adjudicated and reduced to the Final Judgment, Select seeks to avoid the agreements it made in the APA and Assumption Agreement.

## SUMMARY OF THE ARGUMENT

The Final Judgment is an Assumed Liability Select agreed to pay and satisfy. The definition of "Assumed Liability" includes "all Liabilities associated with the Assets arising under Environmental Law." "Environmental Law includes every "Applicable Law . . . relating to . . . the protection of natural resources"—including

those laws protecting PPC's oil and gas reserves.  And, because "Applicable law" includes "any federal, state, or local law (*statutory, common, or otherwise*)," "Applicable Law" expressly includes both PPC's common law and statutory state court claims.  Moreover, because "Applicable Law" includes any "judgment adopted or promulgated by a Governmental Authority"—defined as including any "federal, state or local . . . court"—the Final Judgment is *itself* an Applicable Law.

## ARGUMENT AND AUTHORITIES

**A.    The Bankruptcy Court erred in determining that Basic's liability to PPC did not "arise under" an Environmental Law.**

The Bankruptcy Court found that the Final Judgment is not an "Assumed Liability" because it does not "arise under" an Environmental Law.  [App. 1476-86; R002965-975[5]].  This is incorrect.

### *(1)    PPC's statutory claim for waste arises under the Texas Natural Resources Code—an Environmental Law.*

To "arise" means "to originate from a source."  *Arise*, MERRIAM-WEBSTER ONLINE DICTIONARY (2024); *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 385 (2016) (reading the words "arising under" to "extend quite broadly").  Basic's liability arises from PPC's negligence per se claim.  PPC's state court negligence per se claim originates from the Texas Natural Resources

---

[5] The transcript of the Bankruptcy Court's ruling is located at R002947-82 of the record. [*See* ECF 9-5, 1095 of 1130]. All citations herein to that transcript are to that portion of the record included as part of ECF Doc. 9-5. For clarification, the final volume of the record begins at bates-label R002893. [ECF 9-6]. As a result, the record employs the bates-range between R002893–2982 twice.

7

Code statutory prohibition on the waste of oil and gas resources. *See* Tex. Nat. Res. Code § 85.045 (prohibiting waste); § 85.046 (defining waste as underground loss of oil or gas, however caused); § 85.321 (creating private cause of action for statutory waste: "A party who owns an interest in property or production that may be damaged by another party violating . . . [a] . . . law of this state prohibiting waste . . . may sue for and recover damages . . . ."); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 420 (Tex. 2010) ("We hold that section 85.321 creates a private cause of action . . . ."); *Ring Energy v. Trey Res. Inc.*, 546 S.W.3d 199, 207 (Tex. App.— El Paso 2017, no pet.) ("No doubt, Section 85.321 creates a private cause of action for . . . breach of the statutory duty not to commit waste."); *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d 140, 161 (Tex. App.—Eastland 2010, no pet.) ("Based on the Texas Supreme Court's holding in *Emerald*, Discovery has the right under Section 85.321 to assert its negligence per se claims against BP, whether the claims are labeled as a private cause of action for violations of statutes and Railroad Commission rules and orders or as negligence per se claims for violations of the same statutes, rules, and orders.").

The Texas Natural Resources Code is an "Environmental Law" insofar as the Code relates to the "protection of natural resources," including oil and gas, by statutorily prohibiting the waste and loss of oil and gas and creating a private cause of action to remedy waste. *See* Tex. Nat. Res. Code §§ 85.045; 85.046.

8

The Bankruptcy Court erred in reasoning that PPC's statutory claim for negligence per se was not submitted to the jury in the charge. [App. 1483-84; R002972-973]. Critically, PPC's claims for negligence and negligence per se relied on the same operative factual theory—namely, that Basic's conduct caused the underground waste and loss of oil and gas resources in violation of Basic's common law and statutory duties. Because the negligence and negligence per se theories required the same factual finding from the jury, the state trial court properly submitted the negligence and negligence per se questions in a single, broad-form question. *Discovery Operating, Inc. v. BP Am. Prod. Co.*, 311 S.W.3d at 146 (holding negligence per se claim for waste "inextricably intertwined" with claims for negligence, common law waste, and statutory waste); *Tex. Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990); *Mohammagi v. Albertsons, LLC*, 656 S.W.3d 851, 858 (Tex. App.—Houston [14th Dist.] 2022, pet. filed) ("Generally, broad form jury submissions are required whenever feasible."); TEX. R. CIV. P. 277 ("[In] all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions.").

The Bankruptcy Court incorrectly reasoned that the use of the broad form negligence question had the effect of not submitting PPC's statutory negligence per se claim at all. [App. 1480-82; R002969-71; R002970 ("First, the jury charge is based on a negligence cause of action.")]. Rather, the negligence and negligence per

se claims were submitted together in the same question, as required by the Texas Pattern Jury Charge.

Negligence per se is the unexcused violation of a legislative enactment or administrative regulation adopted by a court as defining the standard of conduct of a reasonable person. *Perry v. S.N.*, 973 S.W.2d 301, 304 n.4 (Tex. 1998); *S. Pacific Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973). Therefore, to properly submit an issue of negligence per se, a trial court simply instructs the jury that the prohibited conduct—here, waste—is negligence itself. *See* Texas Pattern Jury Charges – General Negligence, Intentional Personal Torts & Workers' Compensation § 5.1 (2018). In fact, when instructing courts on negligence per se, the Pattern Jury Charge provides the following guidance:

> PJC 5.1 should be given ***if there are claims of both common-law negligence and negligence per se***. It includes both ***an instruction, which should be placed immediately after the definition of "negligence,"*** and a broad-form question ***jointly submitting negligence and proximate cause***.

*See* Comment, PJC 5.1 (emphasis added). This is exactly what the trial court did in the Reeves County case when charging the jury.

Indeed, Texas law ***prohibits*** trial courts from using negligence per se instructions unless the statutory standard of care alters the ordinary negligence standard. *See Louisiana-Pacific Corp. v. Knighten*, 976 S.W.2d 674, 675 (Tex. 1998) ("Texas courts have previously held that a statute that requires a driver to proceed *safely* imposes on the driver a duty of reasonable care, thus precluding a

10

negligence per se instruction."). The fact that the trial court included the negligence per se instruction in the charge to the jury conclusively shows: (1) PPC's statutory waste claim was submitted to the jury; (2) the jury rendered a verdict on the claim; and (3) the claim was reduced to a Final Judgment.

Because PPC's claim for statutory negligence was submitted to the jury as suggested by the Texas Pattern Jury Charge and reduced to the Final Judgment, it arises under the Texas Natural Resources Code—an Environmental Law.

### (2)    *PPC's common law claim for waste is also an Environmental Law.*

The Bankruptcy Court also erred in finding that PPC's claim for negligence did not arise under an Environmental Law. [App. 1476; R002965 ("The final judgment clears the first two hurdles, but it fails on the last one.")].

Negligence is a breach of a legal duty causing damages. *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022). Texas has long recognized the destruction or loss of oil and gas resources breaches a duty not to commit waste of oil and gas and is actionable through common law negligence. *Exxon Corp. v. Miesch*, 180 S.W.3d 299, 311 (Tex. App.—Corpus Christi 2005) ("Texas law has long recognized that a cause of action for negligent waste or destruction of minerals may be maintained by a mineral or royalty owner."), *rev'd on limitations grounds sub. nom. Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194 (Tex. 2011); *see also Elliff v. Texon Drilling Co.*, 210 S.W.2d 558, 583 (Tex. 1948) ("In like manner, the negligent waste and destruction of petitioners' gas and distillate was neither a

11

legitimate drainage of the minerals from beneath their lands nor a lawful or reasonable appropriation of them.").

The Bankruptcy Court erred in conflating "negligence" as a general common law cause of action with the specific common law duty to not commit waste of oil and gas resources. A negligence cause of action gives a right to recover for damages caused by a breach of the common law duty to not commit waste. *Negligence*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("the failure to exercise ordinary care" or a "tort grounded in this failure, usu. expressed in terms of the following elements: duty, breach of duty, causation, and damages"); *Cause of Action*, BLACK'S LAW DICTIONARY (12th ed. 2024) (a "group of operative facts giving rise to one or more bases for suing"). The legal obligation to not commit waste of oil and gas resources is a common law duty. *Duty*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("legal obligation"). PPC's negligence claim arises out of the common law legal obligation (*i.e.*, duty) to not commit waste of oil and gas resources, which is an Environmental Law per the unambiguous terms of the APA.

The APA plainly includes the common law within the definition of "Applicable Law." And, insofar as the common law duty to not commit waste relates to the protection of natural resources, the common law duty is an Environmental Law.

12

**B.      Applying the plain meaning of the APA does not lead to absurd results— it enforces the agreement the parties made.**

Courts applying Texas law "may not rewrite the parties' contract, nor should courts add to its language." *In re Davenport*, 522 S.W.3d 542, 457 (Tex. 2017). "We cannot make new contracts between the parties and must enforce the contract as written." *Id.* When the terms are plain, definitive, and unambiguous, as they are here, the "court cannot vary these terms." *Id.*; *see also Thomas v. Thomas*, No. 05-22-00137-CV, 2023 WL 8862695, at *3 (Tex. App.—Dallas Dec. 22, 2023, no pet.) ("We cannot rewrite a contract or add to its language under the guise of interpreting it.").

"When possible, [Texas Courts] will avoid a construction that is unreasonable, inequitable, or oppressive, or would lead to an absurd result." *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.). "An unreasonable interpretation is one that produces an absurd result or that no reasonable person would have accepted when entering the contract." *Lion Co-Polymers Holdings, LLC v. Lion Polymers, LLC*, No. 01-16-00848-CV, 2018 WL 3150863, at *3 (Tex. App.—Houston [1st Dist.] June 28, 2018, pet. denied). Texas courts apply an exacting standard to parties seeking to use the "absurdity safety valve" to avoid the plain meaning of an unambiguous contract:

> We will not enforce the unambiguous language of a contract if doing so would lead to an absurd result. But, our jurisprudence reserves the "absurdity safety valve" for truly exceptional cases. Mere oddity does not equal absurdity. Likewise, unambiguous

13

> contract terms that lead to a quirky or unusual result do not rise to the level of being unthinkable or unfathomable. Under this demanding standard, Fairfield's interpretation of the Agreement would lead to an absurd result only if it were "quite impossible" that a rational person could have intended it.

*Fairfield Indus., Inc. v. EP Energy E&P Co., L.P.*, 531 S.W.3d 234, 248–49 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

The Bankruptcy Court erred in reasoning that applying the plain language of the APA would yield absurd results. Basic, as a debtor chapter 11 of the Bankruptcy Code, had every incentive to shield its estate from environmental liabilities and claims. *See Midlantic Nat. Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 502 (1986) (noting that the Court was not "reaching the question of whether certain state laws imposing conditions on abandonment may be so onerous as to interfere with the bankruptcy adjudication itself"); *see also In re Am. Coastal Energy*, 399 B.R. at 814 ("The Court also notes that the Supreme Court has left open the possibility that environmental liabilities may be so significant in relation to the debtor's ability to pay that characterizing all or a portion of an environmental claim as an administrative expense may unduly interfere with the bankruptcy adjudication itself."). It is not "quite impossible" that Basic would demand protection for its bankruptcy estate from environmental liabilities or that a prospective purchaser would agree to give such protections in a competitive bidding process in exchange for a lower price tag on the assets.

Moreover, the Bankruptcy Court's concern that finding breach of common law duties related to the protection of natural recourses would "lead to an absurd result that virtually any tort or breach of contract claim involving Basic . . . would qualify as arising under environmental law" is not correct. [App. 1482; R002971]. To illustrate what the Bankruptcy Court considers the far-reaching consequences of such a construction, the Bankruptcy Court posited:

> Let's say an employee [of Basic] gets in an accident and spills gas on the street. A finding of negligence in that case could theoretically meet Plaintiffs' definition arising under environmental law. Right? It's a great [sic] negligence claim, you spilled gasoline on the street … that's the negligence claim, you're liable for it, you have violated environmental law under the APA.

[App. 1482-83; R02971-R002972].    The Bankruptcy Court's hypothetical misconstrues PPC's argument.

PPC does not contend every negligence claim involving environmental facts arises under an "Environmental Law."  But, negligence claims arising from breaches of common law duties to protect—and not waste—oil and gas resources (*i.e.*, natural resources) clearly arise under the definition of "Environmental Law" to which the parties agreed.  There is an obvious distinction between a breach of the duty to drive safely (a breach of which may incidentally involve environmental facts) and a breach of the duty to avoid wasting oil and gas reserves.  And, this distinction protects the parties from the "absurd results" the Bankruptcy Court imagines.  In holding that negligence cannot arise under an "Environmental Law," the Bankruptcy Court

15

effectively strips "common . . . law" from the definition of "Applicable Law" and renders the reference to common law ineffectual, meaningless, and mere surplusage. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 193 (Tex. 2002) ("And our duty is to give effect to all contract provisions, and render none meaningless.").

The Bankruptcy Court cites *In re Motors Liquidation Co.*, 585 B.R. 708 (Bankr. S.D.N.Y. 2018) in support of its analysis.  [App. 1484-85; R002973-74]. The bankruptcy sales transaction in *Motors Liquidation* is strikingly similar in critical respects to the APA and actually supports PPC's position.  In *Motors Liquidation*, as here, the debtor and the purchaser entered into an asset purchase agreement in a chapter 11 bankruptcy case that allocated between liabilities assumed by the purchaser and liabilities retained by the debtor.  *Id.* at 716.  Both here and in *Motors Liquidation*, the allocation of liabilities expressly addressed environmental issues.  *Id.*  But in *Motors Liquidation*, the parties agreed that liabilities "associated with noncompliance with Environmental Laws," including those "arising out of, relating to, in respect of, or in connection with third party Claims related to Hazardous Materials," were ***retained by the debtor***. Here, in stark contrast to *Motors Liquidation*, the environmental liabilities were expressly ***assumed by the purchaser***. *Id.* at 716–17.

Accordingly, in *Motors Liquidation*, when plaintiffs filed a negligence cause of action alleging the contamination of groundwater, the bankruptcy court found these environmental liabilities were retained by the debtor.  *Id.* at 714 (list of claims

16

brought), 715 ("Plaintiffs may not assert common law claims against New GM for personal injury or property damage based on groundwater contamination that migrated from the MPG *before* the sale of the Property to New GM was completed."). Here, where environmental liabilities were allocated to the purchaser—Select—the inverse is true.

**C.    Basic's failure to list the Reeves County case on APA Schedule 3.07 is a breach of warranty, not an expression of the parties' intent to exclude the Final Judgment from the scope of Assumed Liabilities.**

The Bankruptcy Court determined that the absence of the Reeves County litigation from the APA schedule for "Environmental Matters" reinforced its conclusion that the parties to the APA did not understand the Final Judgment to be an "Assumed Liability" under the APA.

***First***, neither the APA nor the Assumption Agreement reflect an understanding among the parties that the Reeves County case was a general liability claim not arising under Environmental Law. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) ("Objective manifestations of intent control, not what one side or the other alleges they intended to say but did not.").

***Second***, the so-called "understanding"—which is not expressed in the contracts—actually *conflicts* with the express language of the APA and Assumption Agreement, which state that Select assumed "all Liabilities" arising under "Environmental Law"—not just liabilities associated with the environmental matters listed on Schedule 3.07. If the parties wanted to limit Select's assumption of

liabilities to just the environmental matters listed on Schedule 3.07, they could have stated as much, but they did not. *Id.* at 768 ("Parties cannot rely on extrinsic evidence to give the contract a meaning difference from that which its language imports, add to, alter, or contradict the terms contained with the agreement itself, make the language say what it unambiguously does not say, or show that the parties probably meant, or could have meant, something other than what their agreement stated.") (internal quotations omitted). If "Assumed Liabilities" *really* refers to the items only listed in the schedules, then the APA definition of "Assumed Liabilities" becomes meaningless.

**Third**, the Bankruptcy Court's reliance on the schedules reads motives or intentions into the contract that are not expressed therein. Such a construction is flatly prohibited by Texas law. *Id.* at 767 ("Thus, extrinsic evidence may be consulted to give meaning to the phrase 'the green house on Pecan Street,' but 'cannot be used to show the parties' motives or intentions apart from' the language employed in the contract."). The language in the APA unambiguously states Select assumes "all Liabilities" arising under "Environmental Law"—not just those listed in the disclosure schedules (which, instead, serve as Basic's representation and warranty concerning environmental liabilities known to Basic at the time the APA was executed). Basic's failure to list the Reeves County litigation on Schedule 3.07 is a breach of its warranty, which would give rise to, if anything, a claim by Select

against Basic for the breach.  But the omission is not an expression of the parties'

intent that may serve as a shield to PPC's claim related to an "Assumed Liability."

## **CONCLUSION AND PRAYER**

For the foregoing reasons, PPC respectfully requests that this Court reverse

the Order and remand this matter to the Bankruptcy Court.

Respectfully submitted,

*/s/ Michael K. Reer*

Jeff P. Prostok
State Bar No. 16352500
jprostok@forsheyprostok.com
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas  76102
Telephone No.: (817) 877-8855
Facsimile No.: (817) 877-4151

and

Michael K. Reer
Attorney-in-charge
S.D. Tex. ID. 3272174
State Bar No. 24088281
mreer@hfblaw.com
**HARRIS, FINLEY & BOGLE, P.C.**
777 Main Street, Suite 1800
Fort Worth, Texas  76102
Telephone No.: (817) 870-8700
Facsimile No.: (817) 332-6121

**ATTORNEYS FOR APPELLANTS
PPC ENERGY, LP AND PRIEST
PETROLEUM CORPORATION**

19

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. Bankr. P. 8015(h), the undersigned hereby certifies that this brief complies with the pagination limitations of Fed. R. Bankr. P. 8015(a)(7)(A) and word limitations of Fed. R. Bankr. P. 8015(a)(7)(B). Exclusive of the exempted portions specified in Fed. R. Bankr. P. 8015(g), the brief contains 19 pages. Exclusive of the exempted portions specific in Fed. R. Bankr. P. 8015(g), the brief contains 4,557 words. The brief has been prepared using Microsoft Word. The undersigned has relied upon the pagination count feature and word count feature of this word processing software in preparing this certificate.

*/s/ Michael K. Reer*
Michael K. Reer

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing instrument was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record on July 12, 2024.

*/s/ Michael K. Reer*
Michael K. Reer